Larry Delbert PINNEY, Petitioner,

v.

**NATIONAL TRANSPORTATION SAFE-
TY BOARD, and Federal Aviation
Administration, Respondents.**

No. 92–9529.

United States Court of Appeals,
Tenth Circuit.

April 28, 1993.

Lawrence A.G. Johnson, Tulsa, OK, for petitioner.

Harry S. Gold, F.A.A., Washington, DC (Peter J. Lynch, Manager, Appellate Branch, with him, on the brief), for respondents.

Before MOORE, Circuit Judge, GODBOLD, Senior Circuit Judge,* and ANDERSON, Circuit Judge.

GODBOLD, Senior Circuit Judge:

Pinney appeals from the National Transportation Safety Board's (NTSB) order affirming the Federal Aviation Administration's (FAA) revocation of his airman certificates. This court has jurisdiction pursuant to 49 U.S.C.App. § 1486(a)(1988). The FAA revoked Pinney's certificates pursuant to 14 C.F.R. § 61.15,[1] based on his conviction for conspiring knowingly and intentionally to import marijuana into the United States. Pinney contends that, prior to 1984, the FAA did not have the statutory authority to promulgate § 61.15, and, even if it did, the proper sanction was a suspension rather than a revocation. We reject both of Pinney's contentions and affirm the NTSB's order.

## I. FACTUAL BACKGROUND

In 1986 Pinney pleaded guilty to a charge of knowingly and intentionally conspiring to import marijuana in violation of 21 U.S.C. §§ 952, 960(a)(1), 963. The indictment alleged that in 1981 Pinney and a co-conspirator named Rourke: (1) flew a plane from Oklahoma to South Cacus Island to be later used to import marijuana, and (2) obtained a plane on Antigua Island to be later used to import marijuana. Pinney filed a petition to enter a guilty plea. In this petition Pinney admitted that, at the time of the first act, he knew that "the plane may be used to import marijuana." He further admitted that, on both occasions, he acted "with knowledge Rourke was smuggling marijuana into the U.S." It is agreed that the planes were later used to bring marijuana into the United

States. Based on the conspiracy conviction, the FAA revoked Pinney's airman certificates pursuant to 14 C.F.R. § 61.15.

Pinney's initial challenge to the FAA's order was heard by an ALJ who granted summary judgment to the FAA on the issue whether a violation of § 61.15 had occurred but held a full evidentiary hearing on the issue of the proper sanction. At the hearing Pinney did not deny that he had committed the acts described in the indictment, but he contended that those acts constituted the extent of his involvement with the conspiracy. He also stated that, regardless of his petition to enter a guilty plea, in 1981 he only possessed hearsay knowledge of Rourke's drug smuggling activities. The FAA relied on Pinney's statements in his petition and the testimony of an FBI agent that Pinney's involvement in the conspiracy extended beyond the two acts discussed in the indictment. The ALJ concluded that the proper sanction was revocation.

Pinney appealed to the NTSB. The NTSB upheld the grant of summary judgment on the issue whether § 61.15 had been violated, based on the undisputed evidence of Pinney's conviction for an offense related to the importation of marijuana. It further concluded that the acts underlying Pinney's conviction were sufficiently related to operation of an aircraft to justify revocation. Pinney challenges both of the NTSB's conclusions and also asserts that in 1981 the FAA did not have authority to enact § 61.15.

## II. DISCUSSION

### A. Statutory Jurisdiction

We hold that the FAA's promulgation of § 61.15 did not exceed its statutory jurisdiction. An agency with a general grant of rulemaking authority has jurisdiction to promulgate regulations reasonably related to the purposes of its enabling legislation. See

* The Honorable John C. Godbold, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

1. Section 61.15 provides, in relevant part:

(a) A conviction for the violation of any Federal or state statute relating to the ... importation of ... marijuana ... is grounds for—
....
(2) Suspension or revocation of any certificate or rating issued under this part.

*Gallegos v. Lyng,* 891 F.2d 788, 791 (10th Cir.1989) *(quoting, Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973)). This court is required to set aside an agency's action that exceeds its statutory jurisdiction. *Gallagher v. NTSB,* 953 F.2d 1214, 1220 (10th Cir.1992); *see also* 5 U.S.C. § 706(2)(C) (1988). Because Congress has given the FAA general authority to enact regulations necessary to provide adequately for safety in air commerce, *see* 49 U.S.C.App. § 1421(a)(6) and 49 U.S.C. § 106(g) (transferring duty to regulate air safety from Sec. of Transportation to the FAA Administrator), the promulgation of § 61.15 was within the FAA's jurisdictional grant if there is a reasonable relationship between a conviction for violating a drug law and flight safety.

Section 61.15 provides that a conviction for violation of any federal or state statute relating to drug trafficking is ground for the suspension or revocation of airman certificates. Pinney contends that § 61.15 is not reasonably related to flight safety because a conviction for a drug offense does not necessarily implicate a pilot's competence. The FAA's rationale for promulgating § 61.15, however, was not that persons convicted of drug offenses were dangerously incompetent but rather that a conviction for violating a drug law:

> clearly demonstrates a tendency to act without inhibition in an unstable manner without regard to the rights of others, and clearly demonstrates that the applicant for a certificate would not be compliance-minded regarding the many requirements necessary for safety in air commerce and air transportation.

38 Fed.Reg. 17,491 (1973). The FAA thus has concluded that pilots convicted of violating drug laws are potentially dangerous because they are also likely to violate require-ments concerning air safety. The FAA's jurisdiction extends to acts that potentially endanger flight safety. *Hill v. NTSB,* 886 F.2d 1275, 1280 (10th Cir.1989). Moreover, it is reasonable to conclude that a pilot who has violated a drug trafficking statute is also likely to violate regulations concerning air safety. *Walters v. McLucas,* 597 F.2d 1230, 1232 (9th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979).

In addition, the legislative history of the Aviation Drug–Trafficking Control Act, Pub.L. No. 98–499, 98 Stat. 2312 (1984),[2] indicates that Congress believed that, prior to the Aviation Drug–Trafficking Act, the FAA had jurisdiction to revoke airman certificates based on a conviction for a drug offense. One of the purposes of the Act was to authorize the FAA to take action against pilots involved in drug trafficking even if the pilot had not been convicted. S.Rep. No. 228, 98th Cong., 2d Sess. 2, *reprinted in* 1984 U.S.C.C.A.N. 3916, 3917. The Conference Committee stated that this new authorization was "not intended to take away FAA's general authority under existing law to suspend or revoke an airman's certificate ... when an airman violates the criminal drug laws or FAA's regulations on drugs." H.R.Conf. Rep. No. 1085, 98th Cong., 2d Sess. 9, *reprinted in* 1984 U.S.C.C.A.N. 3920, 3922. The Act's legislative history therefore supports the conclusion that § 61.15 was within the FAA's statutory jurisdiction when it was promulgated.

**B. Summary Judgment**

The NTSB affirmed the grant of summary judgment to the FAA on the issue whether a violation of § 61.15 had occurred based on the undisputed evidence of Pinney's conviction for conspiracy to import marijuana. Pinney contends that the grant of summary judgment on the issue of a violation of § 61.15 was inappropriate because the factual circumstances of his conviction should have been considered. Pure legal conclusions are

---

2. The Act only applies to acts committed after Oct. 19, 1984. Pub.L. Mo. 98–499, § 7, 98 Stat. at 2316. Similarly, the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4181, only applies to acts committed after Oct. 1, 1988. *Id.*

§ 7296, 102 Stat. at 4463. Pinney's actions occurred in 1981 so neither the 1984 nor the 1988 amendments to the Federal Aviation Act are applicable to his conduct.

reviewed de novo. *Janka v. Department of Trans.*, 925 F.2d 1147, 1149 (9th Cir.1991).

Because it is agreed that Pinney pleaded guilty to conspiracy to import marijuana, his conviction clearly fell within the scope of § 61.15. It was therefore appropriate to grant summary judgment to the FAA on the issue whether a violation of § 61.15 had occurred. The factual circumstances of his conviction were relevant only to the issue of the proper sanction, and a full evidentiary hearing was held on that issue.

C. Sanction

■■■ The NTSB held that Pinney's conviction involved use of his airman certificate to a degree sufficient to justify revocation rather than suspension. We will uphold the NTSB's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Winslow v. NTSB*, 885 F.2d 615, 617 (9th Cir.1989). The NTSB has broad discretion to decide the appropriate sanction for a violation of the FAA's regulations. *Cobb v. NTSB*, 572 F.2d 202, 204 (9th Cir.1977) (per curiam).

The NTSB has held that revocation is the appropriate sanction for a drug conviction involving the use of an aircraft. *Administrator v. Anderson*, 1985 WL 71099, *3 n. 16, 1985 NTSB LEXIS 88, *9 n. 16 (Aug. 16, 1985). If there is no showing that an aircraft or the respondent's piloting privileges were used in the connection with the offense, the usual sanction is a suspension. *Id.; Administrator v. Dufresne*, 1981 WL 40309, *2 n. 7, 1981 NTSB LEXIS 20, *5 n. 7 (Aug. 24, 1981). Pinney contends that his participation in the drug conspiracy did not include sufficient use of an aircraft to justify revocation. But Pinney's admission in his petition to enter a guilty plea that he helped Rourke pilot a plane to South Cacus Island with knowledge that Rourke was involved in drug smuggling and that the plane "may be used to import marijuana" constitutes sufficient use of his piloting privileges in connection with his conviction to warrant the sanction of revocation. *See Anderson*, 1985 WL 71099,

*3 n. 14, 1985 NTSB LEXIS 88, at *9 n. 14. The NTSB did not abuse its discretion when it revoked Pinney's airman certificates[3] based on his conviction for conspiring to import marijuana into the United States.

AFFIRMED.

---

3. Pinney also asks this court to clarify that his revocation is only for one year. This is not necessary because the FAA's revocation order states that Pinney cannot apply for new certificates "for a period of one (1) year from the date [Pinney] surrender[s] [his] certificate."